BROWN (IRWIN v.). See Case No. 7,080.

## Case No. 2,015.
### BROWN v. JACKSON.
[1 Wash. C. C. 512.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1806.

NEGOTIABLE INSTRUMENTS—SPECIAL INDORSEMENT —NOTICE OF NON-ACCEPTANCE.

1. The defendant being indebted to the plaintiff in London, for goods, remitted a bill of exchange, drawn upon London, in his favour,

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

which he endorsed "Pay the amount to order for my use." The bill was not accepted nor paid, and was returned to the plaintiff's agent, who demanded payment of the defendant, as endorser. Such a special endorsement releases the endorser from the payment of damages, and prevents the negotiability of the bill. The amount of the bill is to be received by the endorsee, for the use of the endorser.

[See First Nat. Bank v. Reno County Bank, 3 Fed. 257; White v. Miners' Nat. Bank, 102 U. S. 658.]

2. If the endorsee be not a creditor of the endorser, then he is to receive the money, and remit it; or if the bill is dishonoured, he is to return it.

3. In this case, the plaintiff having received the bill in payment of a debt due to him, was entitled to look to every person responsible on the bill, in like manner as if he had bought the bill, with exception of a claim for damages on the endorser.

4. Quere, whether the neglect of the plaintiff to give notice of non-acceptance did not release the endorser.

At law. Indebitatus assumpsit [by Brown against John Jackson] for goods, &c., and another account upon a bill of exchange. [There was a verdict for plaintiff on the first count, and he consented to a new trial.] The defendant being indebted to the plaintiff, a merchant in London, for two separate shipments of goods, remitted to him in December 1804, a bill of exchange drawn by Mr. Crawford, on Barclay & Salkield, at Manchester, at sixty days, for the amount of the last shipment of goods, and endorsed by the defendant in the following terms, viz. "Pay the amount to Brown, or order, for my use." The bill was endorsed by the plaintiff, to Fox & Company of Manchester, who presented the bill to the drawees; who, refusing to accept the same, it was noted on the 12th of February 1805, and was protested for non-payment on the 16th April. The bill was accordingly returned to the plaintiff, who sent it forward immediately to Gardner of Philadelphia, to receive the amount of it, with damages and costs, from the drawer and endorser. The bill was received on the 10th of June, and on the same day notice was given to the drawer, and payment of principal, damages, &c. demanded. On the next day, notice was given to the defendant, and the same demand made, and that the defendant would be held responsible for the bill. On the 19th, the agent of the defendant, James Jackson, (he as well as the agent and drawer all living in Philadelphia,) wrote to Gardner, that he would not pay the damages; and that unless the bill was given up on that day, he should consider his principal discharged. Gardner immediately requested to know the ground on which the defendant refused to pay the damages, and receiving no answer, he called on James Jackson, and being satisfied, from the nature of the transaction between the plaintiff and defendant, that the damages could not be demanded, he waived them, and agreed to receive the principal

and interest; but James Jackson saying that he was not prepared to pay the bill, offered a note, with an endorser, for the amount at ninety days, which was refused. It was proved by the drawer of the bill, that he stopped payment about three in the afternoon of the 11th, but he said that he did not doubt but that he paid on the 10th. The count on the bill states, that notice of non-acceptance was given to drawer and endorser, but this was not proved. Witnesses were offered to prove the custom in Philadelphia, that in cases like the present, the endorser is considered as discharged; but the court refused to hear such testimony.

Ingersoll and Read, for defendant, admitted that the plaintiff was entitled to recover for the amount of the first shipment of goods, but that he was discharged as to the other; and that the plaintiff could not recover either on the original ground of the debt, or on the bill. That the creditor, receiving a bill with a special endorsement, like the present, was to be considered merely as the agent of the endorser, and upon the protest, ought immediately to have returned the bill; but by retaining it, he had made the debt his own, and could not recover on the bill against the endorser. They cited [Chapman v. Steinmetz] 1 Dall. [1 U. S.] 261; [M'Kimm v. Riddle] 2 Dall. [2 U. S.] 100; [Keppele v. Carr] 4 Dall. [4 U. S.] 155.

WASHINGTON, Circuit Justice, asked the counsel for the defendant, if the plaintiff could, in a separate action, recover on this bill, against the defendant, could he recover in this action?

Mr. Ingersoll admitted that he could; except that in this action the declaration averred notice of non-acceptance, which was not proven. The plaintiff therefore could not recover, in consequence of his negligence in not giving notice of non-acceptance. It is necessary to protest for non-acceptance, and to give notice. 2 Term R. 717, 718. If the agent retains the bill, it is so much money in his hands, and is a payment of so much.

WASHINGTON, Circuit Justice. What circumstance is it, which constitutes this so much money in the hands of the agent? And is he further or otherwise liable, than for neglect in not returning the bill?

Ingersoll. The negotiating the bill produces this effect.

Levy and Dallas, for plaintiff, insisted, that the plaintiff was not an agent of the defendant, but had an interest in the bill, and was entitled to claim against the drawer and endorser. That nothing done by him, made this bill a payment of the original debt; but that if it did, still the plaintiff might recover on the count on the bill. That notice of non-acceptance was not necessary. Brown v. Barry, 3 Dall. [3 U. S. 365]. And as to the notice laid in the declaration, it was mere surplusage, and need not be proved.

WASHINGTON, Circuit Justice, charged the jury. It is difficult to perceive, upon what principle of law or justice, it can be contended, that the defendant is neither liable on the ground of the original debt, nor on the bill. The defendant was once indebted in this sum to the plaintiff, and remitted this bill for the purpose of paying it when collected. The bill has been duly presented, protested, and a demand of payment made in proper time. Neither the original debt nor the bill has been paid by the defendant, and it seems strange to say, that the defendant is altogether discharged. Independent of the glaring injustice, at first view, of this doctrine, it would be mischievous in the highest degree, if it be founded; since no creditor would accept a bill of this kind from his debtor, but would either demand payment at once, or insist upon a bill which should entitle him, in case it was dishonoured, to claim as well damages as the principal.

What is the nature of such a special endorsement as the present? It prevents the negotiability of the bill, and amounts to a declaration, that in case the bill is protested, no damages are to be recovered. The money is to be received for the use of the endorser; but how it is to be applied, is a matter between the endorser and the endorsee. If the endorsee be not a creditor, then he is to receive the money and remit it; or if the bill be dishonoured, he is to return it. If he be a creditor, then of course he is to apply the money to the credit of the endorser. The latter was this case, and is proved, not only by the letter which accompanied the bill, but from the conduct of James Jackson, who never objected to the liability of the endorser to pay the bill; refusing only to pay the damages.

But suppose the plaintiff was a mere agent. If he negotiated the bill, supposing it had been endorsed generally, then I admit he was a receiver of so much money to the use of the endorser. But on the protest of the bill. he was obliged to repay the money, and consequently, was placed exactly in his original situation; and though he might be responsible for neglect, in not returning the bill in time, yet he could not be said to be a receiver of so much money, to the use of the defendant. But this bill not being negotiable, his endorsee can only be considered as his agent to receive the money from the drawee. If he is to be considered as having made the bill his own, then he has all the rights of an endorsee, unless he has forfeited all recourse against the drawer and endorser, by neglecting to give notice of the non-acceptance; and he is entitled to recover on the bill.

But the fact is, the bill was remitted by a debtor to his creditor, and so as to be considered as a payment when it was paid. If not paid, he was entitled to look to every person liable on the bill, as drawer and endorser, in the same manner as if he had paid so much money for it. If he takes the bill as payment, or by his conduct is considered as having so taken it, as if he retains it an unreasonable time, or negotiates it and receives the amount of it, as in Harris v. Johnston [3 Cranch (7 U. S.) 311], in the supreme court; then he cannot sue for the original debt, but he may sue the drawer, and all the endorsers on the bill. His authority is to receive payment of the bill. From whom? From all who are liable to pay it. Who are they? The drawee if he accepts, or the drawer or endorsers, who impliedly agree to pay if the drawee do not. The conduct, therefore, of the plaintiff, in demanding the amount of this bill from the drawer, and from the defendant, was within his authority; and consequently, it did not compel him to take the bill as payment. The bill was merely a collateral security, and so would have been a promissory note, if, on demanding payment from the plaintiff, he had given one. Neither would have been considered as a payment. But it is immaterial to consider, whether the bill was a payment or not. If a payment, then the plaintiff may recover on the count on the bill; if not a payment, then he may recover on the count for goods sold and delivered. But, as it is made a point, that the defendant is discharged, by the neglect of the plaintiff to give notice of the non-acceptance, which may be an important question; and also, that notice being averred and not proved, a recovery cannot be had on the count on the bill; the jury must find for the plaintiff on the first count, the amount of the first shipment, which is not disputed; and on the second, the amount of the bill, subject to the opinion of the court on these points.

The jury found for the plaintiff, who, supposing he could prove notice, consented to a new trial, as to the amount of the bill, the defendant agreeing he might aver his declaration.

[NOTE. On the new trial the jury found for plaintiff for the principal and interest of the bill.]